[L.A. No. 30460. In Bank. May 4, 1976.]

CHARLES WILLIAMS, a Minor, etc., et al.,
Plaintiffs and Appellants, v.
M. J. HORVATH et al., Defendants and Respondents.

---

**COUNSEL**

Hugh R. Manes for Plaintiffs and Appellants.

Michael B. Weisz and Richard A. Weisz as Amici Curiae on behalf of Plaintiffs and Appellants.

Burt Pines, City Attorney, John T. Neville, Assistant City Attorney, Robert E. Shannon, Burk M. Wiedner and Philip Shiner, Deputy City Attorneys, for Defendants and Respondents.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Charles R. B. Kirk, Deputy Attorneys General, Richard L. Knickerbocker, City Attorney (Santa Monica), Rondrew A. Outlaw, Deputy City Attorney, John H. Larson, County Counsel (Los Angeles), Robert C. Lynch, Assistant Chief Deputy County Counsel, Frederick R. Bennett, Deputy County Counsel, John B. Clausen, County Counsel (Contra Costa), James A. Klinkner, Deputy County Counsel, Stephen Warren Solomon and Ronald L. Gould as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**MOSK, J.**—Plaintiff minors, by their guardians ad litem, filed an action for damages in the superior court against two named and ten unnamed Los Angeles police officers. The complaint alleged that defendants deprived plaintiffs of civil rights guaranteed by the United States Constitution by "deliberately assaulting and battering plaintiff[s] without just cause or provocation, by imprisoning plaintiff[s] without reasonable cause or warrant, and by willfully threatening to shoot and injure plaintiff[s]." The action was grounded exclusively on the federal Civil Rights Act. (42 U.S.C. § 1983.)[1]

Defendants demurred on two grounds: (1) the superior court lacked jurisdiction to entertain an action under the federal Civil Rights Act, and (2) the complaint failed to allege compliance with a California statutory provision which requires that claims for personal injury against a

[1]Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

governmental employee be presented to the public entity employer not later than 100 days after accrual of the cause of action (Gov. Code, § 911.2). The court sustained the demurrer on the second ground, and dismissed the action after plaintiffs declined to amend the complaint. (Code Civ. Proc., § 581, subd. 3.)

■ With regard to the authority of the superior court to entertain an action brought under section 1983, it is now clear that absent an exclusive grant of jurisdiction to the federal courts in the congressional act, state courts of general jurisdiction have concurrent authority to adjudicate federally created causes of action. (*Testa* v. *Katt* (1947) 330 U.S. 386, 389-393 [91 L.Ed. 967, 969-972, 67 S.Ct. 810, 172 A.L.R. 225].) In *Brown* v. *Pitchess* (1975) 13 Cal.3d 518, 520-523 [119 Cal.Rptr. 204, 531 P.2d 772], we reaffirmed this principle and declared, "The majority of courts considering the question concur in our conclusion that state courts do have concurrent jurisdiction over actions arising under section 1983." (*Id.,* at p. 523.) Accordingly, defendants now concede the jurisdictional point.

There remain for decision, however, two significant questions of first impression in this court: (1) whether a complaint filed in state court under section 1983 must allege compliance with the 100-day claim requirement of the Government Code; and (2) whether the employee police officers are entitled to counsel and ultimate indemnification from the employer governmental entity under state indemnification statutes (Gov. Code, § 825 et seq.) when the action is grounded in federal law. The first issue entails analysis of the state claim requirement in light of the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2) in order to determine whether the state law purports to alter or restrict federally created rights. The second issue is purely a matter of statutory construction and requires us to determine whether the Legislature intended that the government's role as guarantor of tort claims against its employees extend to claims based on federal law. We shall discuss these points in the sequence indicated.

I

Deciding "whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." (*Perez* v. *Campbell* (1971) 402 U.S. 637, 644 [29 L.Ed.2d 233, 239, 91 S.Ct.

1704].) We begin that process with a brief synopsis of relevant portions of the state statutory scheme known as the Tort Claims Act. (Gov. Code, tit. 1, div. 3.6.) This body of legislation was enacted following our decision in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], which abolished the doctrine of governmental tort immunity. Government Code section 815 restores sovereign immunity in California except as provided in the Tort Claims Act or other statute. Thus the intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied.

One key prerequisite to waiver of immunity is contained in Government Code section 911.2, which provides in relevant part that "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented [to the public entity] . . . not later than the 100th day after the accrual of the cause of action. . . ." Section 945.4 implements this requirement by declaring that absent such a timely claim no action for damages can be filed against the public entity. In turn, section 950.2 prescribes that "a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under Part 3 (commencing with section 900) of this. division . . . ." Accordingly, submission of a claim within 100 days is a condition precedent to a tort action against either the employee or the public entity.

By contrast, section 1983 of the federal Civil Rights Act has no comparable requirement for the filing of claims; indeed, there is no limitation period provided in the federal statute. In the absence of a uniform statute of limitations in the congressional act, the courts, whether state or federal, typically apply the state limitations statute which governs actions to redress the wrong most closely analogous to that described in the complaint. (See, e.g., *O'Sullivan* v. *Felix* (1914) 233 U.S. 318 [58 L.Ed. 980, 34 S.Ct. 596]; *Campbell* v. *Haverhill* (1895) 155 U.S. 610, 618 [39 L.Ed. 280, 283, 15 S.Ct. 217]; *Baker* v. *F & F Investment* (7th Cir. 1970) 420 F.2d 1191, 1195; see generally Note, *A Limitation on Actions for Deprivation of Federal Rights* (1968) 68 Colum.L.Rev. 763.) Thus defendants first argue that the 100-day claim requirement of section 911.2 is nothing more than a state statute of limitations, which remains operative whether the action against the governmental employee

is grounded on state or federal law. Plaintiffs reject defendants' characterization of the claim requirement; they contend it is nothing less than a remnant of sovereign immunity and a substantive impediment to the exercise of a federally created right, and as such is void under the supremacy clause.

In the federal arena, where section 1983 actions usually surface, the position here urged by plaintiffs has prevailed whenever appellate courts have been faced with a conflict between the Civil Rights Act and California law relating to tort liability. In *Smith* v. *Cremins* (9th Cir. 1962) 308 F.2d 187 [98 A.L.R.2d 1154], decided after *Muskopf* but before the enactment of the Tort Claims Act, the court determined that the true statute of limitations for cases arising under section 1983 in California was the general three-year period for actions based on "a liability created by statute." (Code Civ. Proc., § 338, subd. 1.) The court reasoned that while certain of the acts proscribed under section 1983 have a readily discernible analogue in state tort law, there are others—for example, prisoners' rights suits challenging conditions of confinement—for which there is no counterpart. Accordingly, because the demands of uniformity require that there be a single statute of limitations for all section 1983 actions in a given state, the court concluded that the three-year period would apply regardless of the particular facts alleged in any individual complaint.

After the passage of the Tort Claims Act, federal appellate cases reaffirmed *Smith* against the claim that section 911.2 provided a specific period of limitations for suits against governmental employees. In *Willis* v. *Reddin* (9th Cir. 1969) 418 F.2d 702, the plaintiff alleged a deprivation of constitutional rights in that the defendant police officers removed $178 from his person after arresting him, assertedly to insure he would be unable to make bail. The district court dismissed the action on the ground the notice and time requirements of the Tort Claims Act were not met.

The Ninth Circuit Court of Appeals reversed, reasoning that "In California statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are more than procedural requirements. They are elements of the plaintiff's cause of action and conditions precedent to the maintenance of the action. When the action is against the public employee rather than the public entity such statutes are given the same effect.

"While it may be completely appropriate for California to condition rights which grow out of local law and which are related to waivers of the sovereign immunity of the state and its public entities, California may not impair federally created rights or impose conditions upon them. Were the requirements of the Tort Claims Act nothing more than procedural limitations we would in fashioning the remedial details applicable to the federally created right involved here, determine whether the California courts would apply the requirements of the California Tort Claims Act. However since the requirement of that Act, under the interpretations of the California courts, conditions the right, we think it would be singularly inappropriate to fashion a federal procedural detail by any reference to it." (Fns. omitted.) (*Id.,* at pp. 704-705.)

In *Donovan* v. *Reinbold* (9th Cir. 1970) 433 F.2d 738, similar conclusions were expressed by another Ninth Circuit panel. *Donovan* is also illustrative of the range of matters that may arise under section 1983: the suit charged loss of public employment in retaliation for the plaintiff's exercise of First Amendment rights. The defendants argued that the limitation and claims provisions of the Tort Claims Act should be read into the Civil Rights Act. The court rejected the contention, explaining that "The assumed analogy between the federal right created by the Civil Rights Act and the state created remedies and immunities found in the Tort Claims Act is ephemeral. As Mr. Justice Harlan observed concurring in Monroe v. Pape (1961) 365 U.S. 167, 196 . . ., 'a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.'

"Congress has not evinced any intention to defer to the states the definition of the federal right created in section 1983, or to adopt the states' remedies or procedures for the vindication of that right. It has never indicated an intent to engraft onto the federal right state concepts of sovereign immunity or of state susceptibility to suit, which are the concepts that are the roots of the California Tort Claims Act. Indeed, the history of section 1983, summarized in Monroe v. Pape, supra, . . . vividly demonstrates that state concepts of sovereign immunity were alien to the purposes to be served by the Civil Rights Act. [Citation.] An incorporation of such state created policies 'would practically constitute a judicial repeal of the Civil Rights Act.' [Citations.]" (*Id.,* at pp. 741-742; see also *Ney* v. *State of California* (9th Cir. 1971) 439 F.2d 1285, 1287.)

Our own view of the claims requirement comports with that of *Smith, Willis,* and *Donovan.*[2] Section 1983 was enacted over a century ago in response to the patent inadequacy of state enforcement of constitutional guarantees for the newly enfranchised black citizenry. While the civil disorders of the Ku Klux Klan in the 19th century, which induced passage of the Civil Rights Act, are no longer significant, society has not yet reached the idyllic state in which all vestiges of racism, oppression, and malicious deprivation of constitutional rights have been eliminated. Accordingly, the purposes underlying section 1983—i.e., to serve as an antidote to discriminatory state laws, to protect federal rights where state law is inadequate, and to protect federal rights where state processes are available in theory but not in practice (*Monroe v. Pape* (1961) 365 U.S. 167, 173-175 [5 L.Ed.2d 492, 497-499, 81 S.Ct. 473])—must still be served, and may not be frustrated by state substantive limitations couched in procedural language.[3]

In *Monroe,* the seminal case on the applicability of section 1983 to state police officers, the Supreme Court spoke directly to the contention that current state law provided an appropriate remedy for deprivation of constitutional guarantees: "Although the legislation was enacted because of the conditions that existed in the South at that time, it is cast in general language and is as applicable to Illinois as it is to the States whose names were mentioned over and again in the debates. It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." (365 U.S. at p. 183 [5 L.Ed.2d at pp. 502-503].)

---

[2]The Attorney General, as amicus curiae, asks us to disapprove the Ninth Circuit opinions insofar as they apply a three-year, rather than a one-year, statutory period of limitations. The issue is not properly before us, since this action was filed within one year after the cause of action arose. (Code Civ. Proc., § 340, subd. 3.) Contrary to the implied assumption of the Attorney General, an alleged civil rights violation may not always arise in a tort-like circumstance.

[3]Much of the law on the question of the extent state procedure may be applied to federal questions in state court has arisen in the context of the Federal Employers' Liability Act. (See Hill, *Substance and Procedure in State FELA Actions—The Converse of the Érie Problem?* (1956) 17 Ohio St. L.J. 384; Note, *State Enforcement of Federally Created Rights* (1960) 73 Harv.L.Rev. 1551.) Professor Wright notes that in the early days there was "doubt as to where to draw the line between substance and procedure, but there was no doubt that there was some area of procedure which the state could continue to regulate for itself even in federal claim cases. Perhaps this is still true today, but if so the area of procedure has become so shrunken as to fall within the maxim *de minimis.*" (Wright, Law of Federal Courts (1963) § 45, pp. 149-150.)

Similarly, the California remedy of recourse to the Tort Claims Act need not be first sought before a plaintiff is free to invoke the Civil Rights Act. While there may be considerable overlap between the two statutes in given circumstances, the purposes underlying them are distinct. The state scheme, as noted at the outset, was conceived to strictly limit governmental liability; the federal legislation, by contrast, was designed to ensure an adequate remedy for violations of civil rights. The 100-day claim provision of section 911.2 is a condition precedent to the maintenance of an action under state law. (Gov. Code, § 945.4; *Redlands etc. Sch. Dist.* v. *Superior Court* (1942) 20 Cal.2d 348, 360 [125 P.2d 490]; *Miner* v. *Superior Court* (1973) 30 Cal.App.3d 597, 602 [106 Cal.Rptr. 416]; *Meester* v. *Davies* (1970) 11 Cal.App.3d 342, 348 [89 Cal.Rptr. 711]; *Petersen* v. *City of Vallejo* (1968) 259 Cal.App.2d 757 [66 Cal.Rptr. 776]; *Calabrese* v. *County of Monterey* (1967) 251 Cal.App.2d 131 [59 Cal.Rptr. 224]; *Collins* v. *County of Los Angeles* (1966) 241 Cal.App.2d 451 [50 Cal.Rptr. 586]; see generally Van Alstyne, Cal. Government Tort Liability Supp. (Cont.Ed.Bar 1969) §§ 8.13, 8.14.) As aptly described in *Illerbrun* v. *Conrad* (1963) 216 Cal.App.2d 521, 524 [31 Cal.Rptr. 27], the filing of a claim for damages "is more than a procedural requirement, it is a condition precedent to plaintiff's main-taining an action against defendants, in short, an integral part of plaintiff's cause of action." And while it may be constitutionally permissible for the Legislature to place this substantive impediment in the path of a state cause of action, it is clear that the supremacy clause will not permit a like abrogation of the perquisites of a federal civil rights litigant.

Accordingly, we hold that the claim provision of section 911.2 is inoperative in an action brought under section 1983. Thus the fact that plaintiffs in the case at bar did not allege compliance with this provision is irrelevant to their claim under the Civil Rights Act. As the trial court erroneously sustained defendants' demurrer because of its belief that a claim within 100 days was necessary, we conclude the judgment of dismissal must be reversed.

## II

There are, however, certain sections of the Tort Claims Act which would not inhibit the attainment of the objectives of the Civil Rights Act, namely the indemnification provisions. Government Code section 825 provides in relevant part: "If an employee or former employee of a public entity requests the public entity to defend him against *any* claim

or action against him for an injury arising out of an act or omission occurring within the scope of his employment as an employee of the public entity and such request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed." (Italics added.) Section 825 permits the employing entity to reserve the right to refuse to pay a judgment until it is established that the employee's acts were in fact within the scope of employment. (See also Gov. Code, § 995 et seq.)

As the result of a gratuitous dictum in the Court of Appeal opinion in this case, the question arises whether state indemnification provisions are inapplicable in an action under section 1983. Neither plaintiffs nor defendants argue so. Indeed, the unanimity of viewpoint on this issue is both rare and impressive. We have received entreaties from city attorneys representing some 25 local governmental entities, and amici curiae briefs from the Attorney General and from such diverse groups as the California Organization of Police and Sheriffs, Inc., an association representing 20 separate law enforcement agencies, and the California Rural Legal Assistance, Inc., a public interest law firm which represents disadvantaged persons in rural areas. All these submissions, as well as the briefs of the contending parties, urge that the indemnification provisions remain applicable even when the action is grounded on section 1983.[4]

This appears to be a correct interpretation of both state and federal law. There is nothing whatever in the language of section 825 to suggest that governmental employees are to be indemnified only if the cause of action upon which liability was predicated had its source in the Tort Claims Act. On the contrary, the specific reference in section 825 to *any* claim or action negates this inference.

Nor, as an analysis of the leading federal cases shows, is there anything in section 1983 which precludes a state from indemnifying public employees when liability is founded upon that section.

---

[4]We observe that the city most directly affected, the City of Los Angeles, is not a party to this proceeding. However, Los Angeles impliedly conceded the indemnification point by providing representation of the defendant police officers by its city attorney. And in oral argument the city attorney expressly conceded that the city is statutorily liable for indemnification.

In *Monroe* v. *Pape* (1961) *supra,* 365 U.S. 167, the Supreme Court held that the remedy of section 1983 was not intended to be utilized against a governmental entity, but could be invoked only against the offending employee in his individual capacity. The court based its holding on the legislative history of the 1871 act, and expressly refrained from reaching the policy question of whether "municipal liability will not only afford plaintiffs responsible defendants but cause those defendants to eradicate abuses that exist at the police level." (365 U.S. at p. 191 [5 L.Ed.2d at p. 507].)

*Moor* v. *County of Alameda* (1973) 411 U.S. 693 [36 L.Ed.2d 596, 93 S.Ct. 1785], went one step further in preventing section 1983 suits aimed at governmental entities. In *Moor,* the plaintiffs brought an action in federal court against the Alameda County Sheriff, individual deputies, and the county itself. The suit against the county was predicated both on section 1983 and section 1988. The latter section provides that state law may be applied in a federal civil rights action where federal law is deficient in furnishing a suitable remedy. Section 1983, argued the plaintiffs, was deficient in that individual defendants were often judgment-proof and thus the plaintiffs lacked a suitable remedy; therefore, the court should apply California Government Code section 815.2, subdivision (a), which, the plaintiffs maintained, subjected the county to vicarious liability. The Supreme Court, again relying extensively on legislative history, ruled that section 1988 could be used to apply state law only when a federal cause of action already existed. Since, under *Monroe,* no cause of action could be brought against the county directly, the plaintiffs could not sue the county on a theory of vicarious liability.

Though none of the parties to this litigation raise the issue, we realize that *Monroe* and *Moor* might conceivably be read to deny the states the right to provide indemnity for liability in a section 1983 action. Under this reading, *Moor* would stand for the proposition that a plaintiff cannot achieve indirectly what *Monroe* prevents him from achieving directly. Indemnification, to be sure, in effect allows a plaintiff to recover from the county for injuries inflicted by an employee of the county. However, it does not necessarily follow that *Moor* prevents such a result.

A determination that *Moor* precludes indemnity in a section 1983 action must rest on the premise that Congress, in passing the Civil Rights Acts, made a policy determination that a governmental entity should not pay for damages caused by its employees. This interpretation, in turn,

logically must be grounded on one of two further suppositions: (1) Congress elected to prevent plaintiffs from obtaining damages in certain cases; or (2) Congress deemed it just that individual tortfeasors, rather than governmental entities, should recompense victims.

The former interpretation is clearly inaccurate and inapplicable to the present case. Nothing in the legislative history of the Civil Rights Acts, as interpreted by the Supreme Court, suggests that Congress desired to limit recoveries by plaintiffs. Indeed, it is beyond question that section 1983 "was intended to provide private parties a cause of action for abuses of official authority which resulted in the deprivation of constitutional rights, privileges, and immunities." (*Moor, supra,* at p. 699 [36 L.Ed.2d at p. 604].) No intent to limit recoveries can be inferred merely from the congressional prohibition of suits brought directly against governmental entities.

Moreover, indemnity does not provide additional rights to plaintiffs. It is the defendant and not the plaintiff who is given a separate cause of action for reimbursement under Government Code section 825. The plaintiff in a tort claim against a governmental employee appears to be merely a potential and incidental beneficiary of the indemnification provisions. Thus, any intent to circumscribe plaintiff rights that could be inferred from section 1983 would not be applicable to the present circumstances.

The second supposition—that Congress desired to prevent wrongdoing employees from shielding themselves from liability in any way—is also untenable. First, it is practically impossible to insure that all the costs of wrongdoing by employees will be borne by the employees themselves. For example, Congress could not and did not prevent an employee from purchasing private insurance. It is equally impossible to shield a governmental entity from paying any of the costs of suits against their employees. The risk of large damages recoveries that must be paid by governmental employees individually will, inevitably, lead to demands by the employees for higher wages as a substitute for insurance. Also, further potential costs may be incurred when the government finds it difficult to recruit talented employees or to induce them to perform their public protective duties zealously.

More significant, the legislative history of section 1983 reveals no congressional intent to shield governmental entities as a matter of policy. As the Supreme Court in *Monroe* and *Moor* points out, a Senate

amendment to section 1983 which would have provided for direct governmental liability was deleted by the House on constitutional, not policy, grounds. As the *Moor* court notes, "it cannot be doubted that the House arrived at the firm conclusion that Congress lacked the constitutional power to impose liability upon municipalities . . . ." (*Id.,* at p. 709 [36 L.Ed.2d at pp. 609-610].) .

The inapplicability of such congressional conclusion to this case is evident. In contrast to *Monroe* and *Moor,* no attempt is made here to provide for governmental liability as part of a federal cause of action. To the contrary, the only question is whether a Congress apparently quite mindful of the doctrine of federalism meant to prevent a state law from being enforced in state court. To posit the question is to answer it.

Indeed, support for permitting enforcement of section 825.2 can be found on the face of *Moor* itself. The plaintiffs in that case argued that Congress did not intend " 'to preclude a state from imposing . . . vicarious liability as a matter of state law.' " (*Id.,* at p. 710, fn. 27 [36 L.Ed.2d at p. 610].) The court expressly agreed with the plaintiffs' position, but found that it did not aid them because "Congress did not intend, *as a matter of federal law,* to impose vicarious liability on municipalities for violations of federal civil rights by their employees." (Italics in original.) (*Ibid.*) In the instant case, of course, none of the parties seeks as a matter of federal law · to enforce the indemnity provisions. Those provisions, unlike the vicarious liability statute, are not being "bootstrapped" onto a federal cause of action, but are enforced in an entirely separate proceeding. Such a distinction would make little difference if the congressional limitation on section 1983 actions were enacted to prevent governmental entities from paying for the wrongs of their employees as a matter of policy. But, as shown above, the section 1983 limitation was an affirmation that Congress lacked the power to impose liabilities on municipalities as a matter of federal law.

Further support for this position can be found in the sparse case law dealing with indemnification under section 825.2 in section 1983 actions. In *Stanford Daily* v. *Zurcher* (N.D.Cal. 1973) 366 F.Supp. 18, the plaintiffs brought an action for injunctive and declaratory relief against police officers under section 1983. The plaintiffs were successful and moved for an award of attorney's fees as costs. In granting the motion the court stated: "[A]n award of attorney's fees as costs, at least in California, will not have the undesirable effect of hampering zealous law enforcement . . . . For it is the law in this state that there is a mandatory duty of

the City Attorney, or the County Counsel to defend the policemen or the district attorney. Any judgment against the public official shall be paid by the public entity which employed the individual, provided that he was acting within the scope of his employment at the time. Cal. Gov't. Code § 825 et seq. As such the action may proceed without any personal involvement on the part of the individual." (*Id.*, at p. 25.)

It may be argued that it is incongruous to permit a plaintiff suing under section 1983 to ignore the 100-day claim requirement of the Tort Claims Act and yet enjoy the benefit of indirect entity liability. This argument fails on two grounds. First, a rule proscribing indemnification in actions brought under section 1983 would apply even to those plaintiffs who complied with the claim provision of section 911.2. Thus the rule would preclude indemnification not because the plaintiff "ignored" the state requirement, but simply because he chose to base his action on federal rather than state law.

Secondly and most importantly, entirely different considerations prevail in determining application of the claim requirement and the indemnification provisions of the Tort Claims Act. With regard to the claim section, the question is the extent to which state procedural obstacles may be invoked to obstruct the rights of plaintiffs relying on federal law. On the issue of indemnification, however, there can be no charge that these provisions obstruct invocation of the federal right; on the contrary, they enhance that right by insuring that the individual employee is able to meet his responsibilities.

From a policy standpoint, moreover, we are sensitive to the concerns of law enforcement personnel on this issue. A rule forbidding indemnification in section 1983 actions would subject police officers to unlimited and unforeseeable personal liability for acts committed in the course and scope of employment. This liability would be dependent not on the degree of culpability of the acts themselves but on the purely fortuitous circumstance of whether a given plaintiff chose to ground his complaint on the Tort Claims Act or on section 1983. The employee's personal liability would thus be a matter totally beyond his control. The Legislature cannot have intended this haphazard result. (See *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 14 [84 Cal.Rptr. 173, 465 P.2d 61]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]; 57 Ops.Cal.Atty.Gen. 358, 361 (1974).)

From a slightly different policy perspective, it is suggested that police officers, like other officials, at times may abuse their authority, and the law demands they be held to answer for any wrong so committed. Thus it may be argued that to permit indemnification would remove an effective deterrent to illegal police conduct—the potential of personal liability. But in truly egregious cases the indemnification statutes expressly forbid reimbursement by the entity,[5] and indemnification without authorization would be open to a charge of unlawful gift of public funds. Secondly, the indemnification provisions in effect facilitate the bringing of actions against erring public servants, because the plaintiff is assured that the financial resources of the entity will stand behind the judgment. Thirdly, we might also reasonably surmise that indirect entity liability through indemnification will cause the entity to exercise an additional degree of caution in the hiring and supervision of employees whose functions carry a greater risk of potential liability.

Accordingly, we conclude that the indemnification provisions remain applicable whether the action is grounded on the Tort Claims Act or on section 1983.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[5]Section 825 declares that "Nothing in this section authorizes a public entity to pay such part of a claim or judgment as is for punitive or exemplary damages."