LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC) et al., Plaintiffs,

v.

CITY OF SALINAS FIRE DEPARTMENT et al., Defendants.

No. C–78–2608 SW (SJ).

United States District Court, N. D. California.

Aug. 19, 1980.

Francis Heisler, Heisler, Stewart & Daniels, Carmel, Cal., Vilma S. Martinez, Morris J. Baller, Joel G. Contreras, Ann C. Hill,

Mexican American Legal Defense and Educational Fund, San Francisco, Cal., for plaintiffs and plaintiff-intervenor.

David M. Kennedy, City Atty., Salinas, Cal., Raymond M. Haight, Haight & Haight, Santa Cruz, Cal., Richard S. Whitmore and M. Carol Stevens, Whitmore & Kay, Palo Alto, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER RE CLASS CERTIFICATION

SPENCER WILLIAMS, District Judge.

This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress alleged discrimination against Mexican-Americans practiced by defendant City of Salinas Fire Department and the other defendants with respect to promotions and hirings for the Fire Department. In previous proceedings, the court has concluded the promotions aspect of the case with a finding of discrimination against plaintiff Gilbert Padilla. By the present motion, plaintiffs League of United Latin American Citizens, Monterey County Chapter ("LULAC"), and Gilbert Padilla, and plaintiff-intervenor Mario Martinez move for an order permitting this action to be maintained as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure with respect to plaintiffs' claims of discrimination in defendants' hiring process. The proposed class consists of:

> [A]ll those Mexican-Americans who have applied for employment or may apply for employment with the defendant Salinas Fire Department and who have been or may be denied employment because of their race, color or national origin.

The court finds that class action status is appropriate for this case. As is detailed below, however, the definition of the class must be somewhat narrowed to take into account applicable jurisdictional require-

ments of Title VII and statutes of limitations governing 42 U.S.C. §§ 1981 and 1983, and because the court declines to certify a class including future applicants. In addition, for purposes of administration, three subclasses shall be declared, one composed of class members asserting Title VII claims, and the other two composed of class members asserting claims under section 1981 and 1983 respectively.

## I.

### ISSUES PRESENTED

Before an action may be maintained as a class action, each of the prerequisites of Rule 23(a) as well as the requirements of one of the three subsections of Rule 23(b) must be satisfied. Rule 23(a) establishes four prerequisites to the maintenance of a class action: (1) numerosity, (2) common questions of law or fact, (3) typicality of the claims or defenses of the representative party, and (4) adequacy of representation. Rule 23(b)(2) applies to situations in which the party opposing the class has acted or refused to act on grounds generally applicable to the class.

■ Satisfaction of the numerosity and commonality requirements is not contested by defendants, and the court is persuaded these prerequisites have been met. With respect to the 1981 and 1983 subclasses, the evidence shows that since December 1976 at least forty-six Mexican-Americans have applied for entry level firefighter positions with the Salinas Fire Department, and nine others have applied for entry level fire cadet positions; with respect to the Title VII subclass, since May 1977 at least forty-two Mexican-Americans have applied for entry level firefighter positions and nine for entry level fire cadet positions.[1] Questions of law and fact common to the class will include the alleged adverse impact of the entry

---

1. December 1976 is well within the cut-off date for class membership established by this court for members with claims under 42 U.S.C.  §§ 1981 and 1983. May 1977 is within the time limits established for Title VII claimants. See sections III(B)–(D) below.

level examinations given by defendants and the possible job-relatedness of those tests.[2]

Likewise, defendants do not contend this case falls outside the ambit of Rule 23(b)(2). In fact, this case is a fairly classic example of one in which it is alleged "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

Defendants have opposed certification on but one ground: that none of the proposed class representatives, namely LULAC, Padilla and Martinez, is suitable. This objection may be viewed as going both to the typicality and adequacy of representation requirements.

In this Opinion, the court first sets out several governing legal rules and policies, and then considers how and why the proposed class must be narrowed regardless of the suitability of the proposed class representatives. Finally, the court discusses the suitability of each of the proposed class representatives.

## II.

### RELEVANT LEGAL PRINCIPLES

Resolution of the issues presented by this motion requires this court once again to confront the awkward interface of Title VII's jurisdictional filing requirements and Rule 23's class action prerequisites.[3] This is an area with which courts have struggled ever since Title VII became the law. Unfortunately, it promises to continue to occupy an inordinate amount of court time until Congress recognizes the problem and rationalizes the legislative scheme. Much of the difficulty may be traced to conflicting underlying policies, particularly between

the congressional intention that the Title VII administrative conciliation process be initiated by laypersons and the courts' often strict interpretations of the class action requirements of Rule 23. In resolving such conflicts, this court is guided by several basic principles concerning Title VII class actions.

Title VII's administrative filing requirements are jurisdictional prerequisites to suit in this court. The purpose of the filing requirements is to give reasonably prompt notice to the charged party of the existence of a discrimination complaint and to involve the Equal Employment Opportunity Commission ("EEOC") in the dispute as an investigator and mediator in the hopes of arriving at a voluntary conciliation. All members of an employee class claiming classwide illegal discrimination need not file and comply with Title VII's jurisdictional prerequisites in order to share in court ordered relief as members of a class in whose behalf suit has been brought because timely administrative filing by one class member adequately serves the purposes of the filing requirements with respect to all other members.[4] Nevertheless, because an EEOC filing by one class member cannot revive the claims of others which were no longer viable at the time of that filing, only members capable of having made a timely EEOC filing on or after the date of that filing are eligible to join in a class action based on that person's filing date. Furthermore, as this court ruled in *Inda v. United Air Lines, Inc.,*[5] only the filing dates of the representative plaintiffs or of persons who are permitted to intervene as class representatives are relevant.[6] Finally, in fitting together Title VII's filing requirements with Rule 23's prerequisites to class treatment, it must be borne in mind

---

**2.** This statement is made with reference to the court's ruling in section III(A) below that future job applicants may not be included in the class. As noted there, inclusion of such persons would complicate analysis of the commonality requirement.

**3.** See *Inda v. United Air Lines, Inc.,* 83 F.R.D. 1 (N.D.Cal.1979), wherein this court previously

considered the appropriate scope of the class definition in a Title VII class action.

**4.** *Id.* at 6–7 (and cases cited therein).

**5.** 83 F.R.D. 1 (N.D.Cal.1979).

**6.** *Id.* at 8.

that the administrative mechanism is designed to be initiated by laypersons. This feature is directly linked to Congress' ultimate goal of promoting inexpensive, informal resolution of discrimination complaints. Care must be taken, therefore, not to penalize or unduly to discourage lay initiation of the conciliation process by denying class treatment due to essentially technical noncompliance with Rule 23, particularly where the employer has received notice of potential class claims and the administrative mediation has addressed the subject.

## III.

## NARROWING THE CLASS

### A. *Future Applicants*

■ The proposed class includes Mexican-Americans who "*may* apply for employment . . . and who . . . *may* be denied employment because of their race, color or national origin." (Emphasis added.) During an oral argument in the early stages of this case, though, the court ruled that future applicants would not be included in any class which eventually might be certified. No arguments have been addressed to that ruling, nor any authorities cited to the court holding future applicants important or perhaps necessary members of a class such as that proposed here. The court continues to believe that, on the whole, inclusion of such persons does not confer benefits sufficient to outweigh the risks to future applicants and the substantial element of speculation, distortion and confusion which their inclusion would bring to this case. For example, it would be difficult if not impossible to make a satisfactory assessment of the commonality and typicality requirements of Rule 23(a) with respect to unknown future job applicants, and the adequacy of the proposed class representatives would be subject to an additional challenge to the extent that the interests of future applicants might conflict with those of past applicants. Since unknown future job applicants are, quite obviously, not in position to seek intervention to protect their rights, there is a danger if they are included in the class that they will be bound by an order which is the product of proceedings in which their interests have not been aired sufficiently. To this risk must be added consideration of the modest amount of benefits future applicants stand to gain by their inclusion in the class. Future applicants would not be eligible to receive money damages, backpay or other relief intended to remedy past wrongful acts. They would only be eligible to share the benefits of whatever prospective injunctive relief might be ordered in this case, benefits they should in any event be able to share whether or not they are actually included in the definition of the class. Furthermore, if prospective injunctive relief is ordered which does not adequately address the concerns of future applicants, they would not be barred from asserting their claims at an appropriate subsequent date so long as they are not included in this case as class members.

Therefore, the class which is permitted to go forward shall not include future job applicants as members. It is worth emphasizing that this is not a ruling that future job applicants could never appropriately be included in an employment discrimination class action, just that the circumstances of this case do not warrant their inclusion here.

### B. *Starting Date for the Title VII Subclass*

The proposed class definition makes no reference to the dates on which the members' claims under either Title VII or the Reconstruction Era Civil Rights Acts arose. Consistent with the principles outlined in section II above, however, the subclass of alleged discriminatees which may go forward on the Title VII claim must be limited to those who could have filed timely EEOC complaints at or after the filing date of the earliest-filing class representative. LULAC is the earliest-filing plaintiff approved by the court in section IV below as a class representative, its EEOC charge having

been filed on April 1, 1977.[7] LULAC's charge gave adequate notice to defendants of the classwide nature of the discrimination alleged, and there is every indication the issue of possible classwide discrimination was considered during the administrative conciliation efforts. In the charge itself, LULAC alleged a "pattern and practice" of discrimination against Mexican-Americans.

Defining the litigating class in this instance requires the court to determine the earliest date on which a Title VII claim could have arisen and still have been the subject of a timely EEOC charge filed on April 1, 1977. The court is aided in making this determination by the recent Supreme Court decision in *Mohasco Corporation v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532,[8] although that opinion leaves unresolved certain questions which must be answered for the first time here and which nicely illustrate the continuing difficulties confronting courts and litigants attempting to fit the Title VII legislative scheme into the class action mold.

*Mohasco* resolved the vexing problem of when a Title VII complainant in a deferral state, such as California, is required to file his complaint with the EEOC. The Court concluded the complainant in such a state had 300 days following the occurrence of the alleged unlawful employment practice within which to file, but that no charge could be filed before the earlier of (1) the expiration of 60 days after proceedings have been commenced under state or local law, or (2) the termination of the state or local law proceedings.[9] Under this interpretation of the statute, a Title VII com-

plainant can guarantee the ability to make a timely filing with the EEOC in a deferral state by commencing state or local proceedings no later than 240 days after the alleged violation, for if the state or local action has not been completed by the 300th day, the complainant will still be in position to make a timely filing with the federal agency. On the other hand, if the nonfederal proceedings can be completed in less than 60 days, a complainant initiating those proceedings later than the 240th day after the claimed illegal practice might still meet the deadline for filing with the EEOC.[10] In instances in which state or local proceedings are begun later than the 240th day, the ability to pursue the federal remedy will therefore depend upon the speed with which the state or local agency acts, something which will probably vary from case to case.

This result poses a problem for defining the litigating class in the instant case. Unquestionably, after *Mohasco,* persons whose claims arose as many as 240 days before April 1, 1977 can be considered persons who could have filed on or after that date. Likewise, the *Mohasco* ruling requires that those whose claims arose more than 300 days before April 1, 1977 cannot properly be so considered. But what of persons whose claims arose more than 240 but less than 301 days before April 1, 1977? The status of this group of possible class members apparently turns on the assumption this court makes regarding the speed with which the state agency would have acted if these persons had themselves actually filed state charges.

What assumption should be made? Unfortunately, *Mohasco* is of no direct as-

---

**7.** LULAC's EEOC charge was filed "on behalf of" plaintiff Padilla. For purposes of litigation, both LULAC and Padilla are deemed to have filed on the same day by means of this single complaint form.

**8.** 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

**9.** Id. at 815, 100 S.Ct. at 2491. *See* 42 U.S.C. § 2000e–5(c), (e). Just 17 days earlier, the Ninth Circuit also had ruled the complainant was allowed 300 days following the alleged

violation within which to file with the EEOC. *Saulsbury v. Wismer and Becker, Inc.,* No. 77–2855, Slip Op. at 3631, 3637–43 (9th Cir. June 6, 1980). The court of appeals, however, had expressly refrained from deciding whether a charge lodged with the EEOC before initiation of state proceedings could be considered "filed" for purposes of satisfying the 300-day limit. *Id.* at 3640 n.13.

**10.** See 447 U.S. at 826–835, 100 S.Ct. at 2499–2500 (Blackmun, J., dissenting).

sistance in answering this question. In the view of this court, though, coupling *Mohasco's* holding that an EEOC charge may be filed once state procedures have terminated with the doctrine that class membership extends to all persons who *could* have timely filed on or after the date of the class representative's filing requires assuming California's employment discrimination proceedings could have been completed within one day. Any other assumption might underestimate the swiftness with which the California agency could act in a given case, and to that extent would risk denying persons membership in the class who, under controlling principles developed by the courts, would otherwise have been entitled to share in class relief. That result would be inconsistent with Congress' intent to provide a remedy for victims of employment discrimination and with the well established policy of this circuit to construe Title VII liberally.[11] In addition, the court is cognizant of the fact that adoption of a 300–day rule in this context contributes precision and certainty to an imprecise and uncertain area of employment discrimination law.

Accordingly, absent conclusive evidence that initiation and termination of the state action could not, as a theoretical matter, take place on the same day, it must be held that persons whose Title VII claims arose within 300 days of April 1, 1977 may participate as class members in this case.[12]

### C. Starting Date for the Section 1983 Subclass

■ The subclass of alleged discriminatees which will be allowed to go forward on the claim under section 1983 may not include persons whose individual 1983 claims had become barred by the applicable statute of limitations as of the date this action was filed in this court. It has long been the rule in the Ninth Circuit that claims arising under 42 U.S.C. § 1983 are subject to California's three-year period of limitations for an action "upon a liability created by statute," section 338(1) of the California Code of Civil Procedure.[13] Therefore, persons whose section 1983 claims arose not more than three years prior to the filing of this lawsuit on November 9, 1978 will be included in the class.

### D. Starting Date for the Section 1981 Subclass

■ Class membership with respect to the section 1981 claim also must be limited due to the applicable statute of limitations. The limitations period for actions under section 1981 is ordinarily the most nearly analogous state limitations period.[14] Although it has long since done so for 1983 actions, the Ninth Circuit has yet to issue a definitive ruling identifying the proper limitations period for 1981 suits brought in California.

The most recent occasion on which the Ninth Circuit has addressed the subject oc-

---

11. *Saulsbury v. Wismer and Becker, Inc.*, No. 77–2855, Slip Op. at 3631, 3636 (9th Cir. June 6, 1980):

In interpreting the Act, we have previously stated that:

The Equal Employment Opportunity Act is an intricate statute hedged about with definitional, substantive, and procedural limitations, restrictions, and requirements. The Supreme Court has decreed in *Love v. Pullman* [404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)] . . . that these provisions are not to be interpreted too literally or too technically.

*EEOC v. Wah Chang Albany Corp.*, 499 F.2d 187, 189 (9th Cir. 1974). Where the statute is ambiguous, disputes have almost unanimously been resolved in favor of complainants. (Omission in original.)

12. This ruling is subject to modification if the conclusive evidence referred to should be forthcoming. The best and perhaps the only persuasive evidence would be state statutes or regulations mandating time periods in excess of one day.

13. *Jackson v. Hayakawa*, 605 F.2d 1121, 1127 (9th Cir. 1979) (and cases cited therein); *Smith v. Cremins*, 308 F.2d 187, 190 (9th Cir. 1962).

14. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1974); *Tyler v. Reynolds Metal Co.*, 600 F.2d 232, 234 (9th Cir. 1979) (per curiam).

curred in *Kirk v. Rockwell International Corporation*.[15] The court listed three California statutes of limitations possibly applicable to employment discrimination suits under section 1981: (1) California Code of Civil Procedure § 340(3), providing a one-year period for personal injuries caused by the wrongful or negligent act of another person; (2) California Code of Civil Procedure § 338(1), providing a three-year period for actions founded upon liabilities created by statute; and (3) California Code of Civil Procedure § 343, providing a four-year period for all actions not governed by other statutes of limitations.[16] Because the plaintiff in *Kirk* had failed to satisfy any of the three, the circuit court had no occasion to decide which applied.

Many district courts have held California's three-year statute applies, although none have explicitly considered the one-year statute.[17] The court agrees that, as between the three and four-year statutes, the former is more appropriate. Section 338(1) applies in situations sufficiently analogous to that presented by 1981 suits as to preclude resort to the general catchall provisions of section 343.

No district court cases have been discovered holding California's one-year personal injury statute controls 1981 actions. The absence of case law support, as well as the failure of other district courts considering the issue even to address the one-year provision, reinforces this court's conclusion that section 338(1) is more appropriate than 340(3). As construed by the California courts, the one-year statute applies to tort personal injury actions, whereas the three-year period governs when the liability is

embodied in a statute and is not of a type which existed at common law.[18] Even if the deprivation of federal rights alleged here properly could be analogized to a personal injury—an analogy this court would not be prepared to make—it is not an injury for which redress would have been available at common law, and the elements of the statutory claim under 1981 require proof of facts, such as race discrimination, not included in any common law tort. Therefore, based on a review of the California decisions interpreting the two limitations statutes in question, it becomes clear that this case is properly considered one alleging a "liability created by statute" subject to section 338(1), and not a claim for wrongful or negligent action controlled by section 340(3).

Moreover, as with section 1983, practical considerations favor selection of the "liability created by statute" limitation period as the period uniformly applicable to 1981 actions.[19] The single congressionally enacted claim available under section 1981 may be analogized to more than one cause of action under state law, depending on the facts of the particular case. Inconsistency and uncertainty would surely result if the courts were required to analyze the specific factual allegations of each 1981 complaint to determine the most analogous state law cause of action.

The selection of the "liability created by statute" provision is buttressed by the recent decision of the court of appeals in *Tyler v. Reynolds Metal Company*.[20] The court in *Tyler* was called upon to determine the appropriate statute of limitations in an employment discrimination suit brought un-

---

15. 578 F.2d 814 (9th Cir. 1978), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1978).

16. *Id.* at 820 n.19.

17. *See, e. g., Gage v. Wexler*, 82 F.R.D. 717, 719 n.6 (N.D.Cal.1979); *Wiltshire v. Standard Oil Co. of Cal.*, 447 F.Supp. 756, 765 (N.D.Cal.1978) (and cases cited therein).

18. *County of San Diego v. Sanfax Corp.*, 19 Cal.3d 862, 874–79, 140 Cal.Rptr. 638, 568 P.2d 363 (1977); *Williams v. Horvath*, 16 Cal.3d 834,

838–41, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976); *Rossiter v. Benoit*, 88 Cal.App.3d 706, 714–17, 152 Cal.Rptr. 65 (1979); *Ventura County Employees' Retirement Assoc. v. Pope*, 87 Cal.App.3d 938, 947–43, 151 Cal.Rptr. 695 (1979). *See also De Malherbe v. Int'l Union of Elevator Constructors*, 449 F.Supp. 1335, 1343–44 (N.D.Cal.1978) (and cases cited therein).

19. *See Smith v. Cremins*, 308 F.2d at 190.

20. 600 F.2d 232 (9th Cir. 1979) (per curiam).

der 1981 in Arizona. The three suggested state statutes were provisions governing (1) actions for breach of an oral contract, (2) actions founded on a liability based on statute, and (3) actions for employment discrimination. Although the last of these three might have been considered most closely analogous to the specific facts of that case and the particular claims raised by that plaintiff, the circuit court, apparently adopting the reasoning of its cases dealing with section 1983, applied the "liability based on statute" provision.[21]

Accordingly, persons whose 1981 claims arose not more than three years prior to the filing of this lawsuit on November 9, 1978 will be included in the class.

## IV.

## CLASS REPRESENTATIVES

A. *Plaintiff LULAC*

Defendants contend LULAC, being an organization, is not a member of the alleged class of Mexican-American job applicants who have been denied employment for discriminatory reasons, and for this reason LULAC cannot represent the class. They rely on a line of Supreme Court decisions holding that membership in the class is a prerequisite to serving as a class representative.[22] Plaintiffs have countered by citing a number of lower federal court cases in which organizational plaintiffs have been permitted, either with or without express discussion of the issue, to serve as class representatives in employment discrimination suits brought under Title VII and sections 1981 and 1983.[23]

Neither side's authorities would be persuasive standing alone. On the one hand, LULAC has alleged an injury due to discrimination against its members which gives rise to interests in common with the individual job applicants. This represents an important distinction between this case and those cited by defendant in which the Supreme Court found insufficient injury to the proposed representative had been alleged or the community of interests with the class was lacking. On the other hand, plaintiffs' cases, which do not include any Ninth Circuit authority, do not tackle the problem squarely. Instead, they either ignore the issue or turn on the question of the organization's standing to raise claims on behalf of its members rather than its satisfaction of the Rule 23 prerequisites to class representative status.

Since the argument and original briefing on this motion, however, the Ninth Circuit, in *Social Services Union, Local 535 v. Coun-*

---

21. After setting out the proposed alternative limitations statutes, the court ruled as follows:

"The state limitations statute that we have repeatedly borrowed is a statute that prescribes the limitations for actions founded on a liability created by statute." *Shouse* [*v. Pierce County* (9 Cir.)], 559 F.2d [1142] at 1146–47. *See Mason v. Schaub,* 564 F.2d 308, 309 (9th Cir. 1977). Therefore, we apply the one-year period contained in Ariz.Rev. Stat. § 12–541(3) for actions based on liability created by statute.

600 F.2d at 234. Both *Shouse,* from which *Tyler* took the language in quotation marks, and *Mason* were 1983 cases. *Tyler* said nothing further about the relationship between 1981 and 1983 for statute of limitations purposes, nor did it expressly note the fact that the two cases cited dealt not with 1981 but with 1983. Nevertheless, the inference is clear that the court found nothing distinguishing the two civil rights statutes which was material to the limitations period analysis.

22. *East Texas Motor Freight, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977); *Kremens v. Bartley,* 431 U.S. 119, 131 n.12, 97 S.Ct. 1709, 1716 n.12, 52 L.Ed.2d 184 (1977); *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975); *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974); *Rosario v. Rockefeller,* 410 U.S. 752, 759 n.9, 93 S.Ct. 1245, 1250 n.9, 36 L.Ed.2d 1 (1973); *Hall v. Beals,* 396 U.S. 45, 49, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969) (per curiam); *Bailey v. Patterson,* 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962) (per curiam).

23. *E.g., Firefighters Institute for Racial Equality v. City of St. Louis,* 549 F.2d 506, 508 (8th Cir. 1977); *League of United Latin Citizens v. City of Santa Ana,* 410 F.Supp. 873, 886–91 (C.D.Cal.1976) (and cases cited therein); *Officers for Justice v. Civil Service Comm'n,* 371 F.Supp. 1328 (N.D.Cal.1973).

*ty of Santa Clara*,[24] has recognized the propriety of unions serving as class representatives in employment discrimination suits. The reason is, at least in large part, that private enforcement of employment discrimination laws can benefit from the financial and legal resources which a union is able to contribute.[25] The court of appeals pointed out the union still must satisfy Rule 23(a)(4), demonstrating both the competence of its attorneys and that its interests are not adverse to those of the class, but if these hurdles are cleared, the union may perform the task of class representation.

Organizations dedicated to the eradication of prejudice and bias and to the promotion of equal opportunity for their members are if anything less prone to have conflicts with the class of alleged discriminatees and more suited to class representation than the union in *Social Services Union, Local 535*. As a factual matter, a review of the record and all the relevant circumstances in the present case is convincing that such is true with respect to LULAC. The competence of LULAC's attorneys has been demonstrated in the earlier phases of this case and is not disputed. It is likewise undisputed that LULAC has for a number of years devoted itself to achieving equal employment opportunity for Mexican-Americans, including Mexican-Americans in the Salinas area. Most importantly, the court is able to discern no indication whatsoever of antagonistic interests existing between the organization and the class it would represent.[26] Indeed, defendants themselves have not cited any conflicts, choosing instead to rely upon an attractively simple syllogism: (1) nonmembers of the class cannot be class representatives; (2) LULAC is a nonmember of the class; and, therefore, (3) LULAC cannot be a class representative. The appeal of this mechanical approach to class representation is spoiled by the allegations of direct injury to LULAC, the absence of any real conflict between the class and the

organization, the benefits the class stands to realize if its claims are pressed by the organization, and the fact that there is every reason to believe LULAC will continue to prosecute this action with the vigor it has displayed to this date. Therefore, consistent with *Social Services Union, Local 535* and upon consideration of the relevant factors in this case, the court finds representation of the class by LULAC will be fair and adequate. Defendants' objection, to the extent it might be viewed as going to the typicality requirement of Rule 23(a)(3), must also be rejected.

■ With respect to the Title VII claim, there are additional, special considerations not discussed in *Social Services Union, Local 535* which strongly favor permitting the organization to serve as a class representative. It is well settled that organizations may file EEOC charges on behalf of their members. Barring organizations which have met Title VII's jurisdictional prerequisites from bringing class actions would have the unfortunate result of requiring a duplicate filing to be made by an individual in order to preserve the opportunity to litigate under Rule 23 in the event voluntary conciliation is not achieved. Duplicate administrative filings are unnecessary as far as Title VII's purposes are concerned once the organization's charge has notified the employer of the claim and brought the EEOC into the process. But if the alleged individual discriminatees were unaware that class action status would be denied them unless, in addition to their organization, an individual filed with the EEOC, the chance to employ the class action device would be lost and discrimination in employment could go unremedied. Such a serious risk cannot coexist with the legislative intent that unschooled laypersons initiate the proceedings under Title VII. So long as organizations such as LULAC may bring administrative charges under Title

---

**24.** 609 F.2d 944 (9th Cir. 1979).

**25.** *See Id.* at 946 (quoting *International Woodworkers of America v. Georgia-Pacific Corp.*, 568 F.2d 64, 67 (8th Cir. 1977)).

**26.** The availability of an intervening class member decreases the likelihood of conflict between the class and the representatives even further. See section IV(B) below.

VII, the right to proceed as a class action under Rule 23 based on the organization's satisfaction of the filing requirements and defined in accordance with the date of the organization's EEOC charge must be preserved. In such a situation, the logical choice for a representative is the organization itself.

In accordance with the foregoing, LULAC shall be permitted to represent the class defined in this Opinion. This representation shall extend to both the Title VII claim and the claims under sections 1981 and 1983.

### B. *Plaintiff-Intervenor Martinez*

■ Defendants object to plaintiff-intervenor Martinez serving as a class representative because he did not personally file an EEOC charge and has not individually satisfied the jurisdictional requirements of Title VII. Even if accepted, this argument would not, of course, bar Martinez from representing the subclasses of plaintiffs asserting claims under sections 1981 and 1983. Martinez's 1981 and 1983 claims arose within three years of the filing of this action, and there is no indication he would not be able to represent 1981 and 1983 plaintiffs fairly and adequately. That defendants ignored the 1981 and 1983 issue may indicate they too can find no fault with his serving as a representative with respect to those claims.

As for the Title VII allegations, properly interpreted the cases cited by defendants do not require that *each* representative in a Title VII class action have filed EEOC charges, just that *some* representative must have done so. Class representative LULAC

has done so here, and the purposes of the EEOC filing requirements have been satisfied.[27] Martinez is a member of the Title VII subclass whose presence as a representative would, in the court's view, enhance administration of this action and protection of the interests of the individual Mexican-American job applicants. His intervention as a representative is therefore quite appropriate under Rule 23 and entirely consistent with the policies embodied in Title VII.

Martinez may serve as a representative of all three subclasses.

### C. *Plaintiff Padilla*

■ Plaintiff Padilla's claim against defendants was the subject of the first phase of this case. He alleged and proved discrimination against him in the promotions process. In spite of the fact that the promotions portion of the case has been completed, Padilla contends his own interests will continue to be damaged as long as discrimination remains at the hiring level and he wishes to remain in the litigation as a representative of the class of Mexican-American job applicants. Defendants object to Padilla as a class representative because he does not allege the same injury, namely discrimination in the hiring process, that the class is alleging. In fact, Padilla himself *was* hired.

Essentially, defendants' objection is one based on the typicality requirement of Rule 23(a)(3). The question is whether a person discriminated against in promotions may serve as a representative of a class of persons alleging discrimination in hiring. There is authority on both sides of the issue.[28] Because the court finds the class is

---

**27.** A strong argument can be made that because the purposes of initiating the administrative procedures had been fulfilled by LULAC's filing, and because nonlawyers might easily have refrained from filing their own charges in reliance on LULAC's filing and pursuit of a remedy, Martinez would have been a proper representative and class certification based on the LULAC filing would have been appropriate even if neither LULAC nor Padilla could serve as representatives themselves. Any other result might represent the hypertechnical application of Rule 23 to defeat the laudable and well established legislative goal of encouraging

informal dispute resolution processes to take place without the necessity for persons on either side to employ lawyers to preserve their legal rights.

**28.** *E. g., compare Piva v. Xerox Corp.,* 70 F.R.D. 378, 389 (N.D.Cal.1976), *with Equal Employment Opportunity Comm'n v. Detroit Edison Co.,* 515 F.2d 301, 310 (6th Cir. 1975), *vacated and remanded for further consideration,* 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977). *See Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 491 (N.D.Cal.1978) (and cases discussed therein).

adequately represented by LULAC and Martinez, however, Padilla is not necessary in order to preserve the rights of class members, and the thorny question of his suitability need not be decided. As a matter of the court's management powers over class actions, therefore, the court declines to permit Padilla to serve as a class representative.[29]

## V.

## ORDER

In accordance with the foregoing,

IT IS HEREBY ORDERED that this action may be maintained as a class action on behalf of the following class and its three subclasses:

All those Mexican-Americans who have applied for employment with the defendant Salinas Fire Department and who have been denied employment because of their race, color or national origin, and

1. whose claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, arose not more than 300 days prior to April 1, 1977; or

2. whose claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981, arose not more than three years prior to November 9, 1978; or

3. whose claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983, arose not more than three years prior to November 9, 1978.

IT IS FURTHER ORDERED that plaintiff LULAC and plaintiff-intervenor Martinez shall serve as class representatives of the entire class and each of its subclasses.

---

**29.** The situation would be different if LULAC were not available to serve as a class representative and if its EEOC filing could not be used by any other class member serving as a representative to provide the jurisdictional basis for hearing the class's Title VII claims. In that event, Padilla's filing would be the only one upon which jurisdiction might be founded. The legislative intent that laypersons initiate the administrative conciliation process probably does not permit drawing the fine distinction between discrimination in hiring and discrimi- nation in promotions if it would deny class treatment for the hiring claimants and thereby prevent class members from airing grievances which were actually the subject of a timely EEOC charge. Under the facts assumed in this footnote, the court probably either would have to permit Padilla to serve as a representative or permit a nonfiling class member, such as Martinez, to intervene and prosecute a class action on behalf of a class defined with reference to Padilla's EEOC filing date.