976 F.2d 487
 77 Ed. Law Rep. 1117
 HACIENDA LA PUENTE UNIFIED SCHOOL DISTRICT OF LOS ANGELES,
Plaintiff-counter-defendant-Appellant,
v.
William HONIG, Superintendent of Public Instruction,
Respondent-Appellee,
and
B.C., a minor, by and through his guardian ad Litem, M.C.
* Real-party-in-interest-Appellee.
Nos. 91-55757, 91-55999.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 20, 1992.
Decided Sept. 28, 1992.
 
 T.A. Wagner, Wagner, Sisneros & Wagner, Irvine, Cal., for petitioner-counter-defendant-appellant.
 Barry A. Zolotar, California State Dept. of Education, Sacramento, Cal., for respondents-appellees.
 Joan K. Honeycutt, Tustin, Cal., for real-party-in-interest-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: TANG and HALL, Circuit Judges and SHUBB,** District Judge.
 TANG, Circuit Judge:
 
 
 1
 The Hacienda La Puente Unified School District ("HLPUSD" or "School District") appeals a grant of summary judgment dismissing its action for judicial review of a California Special Education Hearing Officer's decision and a grant of summary judgment on a counterclaim for attorney's fees. We affirm.
 
 I.
 
 2
 B.C. started his seventh grade in the fall of 1988 at Mesa Robles Junior High School in southern California. His schooling before then had been somewhat troubled. He had been held back in the first grade. Although his subsequent report cards revealed some success, they also indicated a repeated need for discipline.
 
 
 3
 The first few months of seventh grade apparently went well. In January 1989, however, his adoptive mother expressed concern to a vice-principal of the junior high school about B.C.'s behavior and school performance. The school convened an informal "student study team" in response. A "homework contract" was established and B.C. received counseling. Meanwhile, the vice-principal wrote of B.C.'s academic and emotional problems to the adoption agency apparently overseeing B.C.'s case.
 
 
 4
 B.C.'s mother again expressed concern in June 1989 about B.C.'s deteriorating academic performance and behavior. She requested a school evaluation for special education services. After testing, the school concluded that B.C. did not qualify for special education.
 
 
 5
 B.C.'s parents meanwhile obtained an independent evaluation of him. In September 1989, the mother presented the evaluation results to the school and requested specialized assistance for B.C. The school psychologist concluded, however, that he still did not meet the criteria for special education. On November 8, B.C.'s parents met with another vice-principal to discuss B.C. and to share the results of the independent evaluation.
 
 
 6
 One week later, B.C. was suspended on November 15 for frightening another student with a stolen starter pistol. On November 21, the school stated its intention to expel him and, the next day, extended the suspension pending a December expulsion hearing. On December 14, 1989, HLPUSD expelled B.C. for an indefinite period of time. This decision was affirmed by the Los Angeles Board of Education.
 
 
 7
 On January 9, 1990, the parents' attorney requested an administrative hearing to determine, among other things, (1) B.C.'s eligibility for special education and related services, (2) whether the acts for which B.C. was expelled were a manifestation of a disability, and (3) whether B.C. was receiving the education to which he was entitled at the time of the acts for which he was expelled.
 
 
 8
 Following two days of hearings, a California Special Education Hearing Officer concluded that B.C. is handicapped by a serious emotional disturbance, and that the actions for which he was expelled were a manifestation of his disability. The hearing officer also concluded that, in expelling the child, the School District wrongly denied him the protection afforded by the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1485. The hearing officer ordered reinstatement at Mesa Robles Junior High and that the School District take other steps to ensure the receipt of the education entitlement due under state and federal law.
 
 
 9
 On May 23, 1990, HLPUSD filed a California Superior Court petition for writ of mandate to enjoin the state school superintendent, Bill Honig, from enforcing the hearing officer's decision. The action was removed to federal court[1] and B.C., as the real-party-in-interest, filed an answer and counterclaim seeking attorney's fees for representation during the administrative hearing.
 
 
 10
 The School District challenged the decision of the hearing officer primarily on the ground that she lacked jurisdiction over the matter. It also opposed the claim for attorney's fees, arguing that the failure to follow California's statutory procedures precluded recovery from a local public entity. The district court rejected both contentions, dismissed the School District's complaint, and awarded attorney's fees incurred in the course of the administrative proceedings. HLPUSD timely appeals both rulings.[2]
 
 II.
 A.
 
 11
 Whether the California Special Education Hearing Officer had jurisdiction to entertain the parents' request for an administrative hearing presents a question of statutory construction to be reviewed de novo. See Home Sav. Bank, F.S.B. v. Gillam, 952 F.2d 1152, 1156 (9th Cir.1991).
 
 B.
 
 12
 When Congress passed in 1975 the statute now known as the Individuals with Disabilities Education Act ("IDEA" or "Act"),[3] it "sought primarily to make public education available to handicapped children." Board of Educ. v. Rowley, 458 U.S. 176, 192, 102 S.Ct. 3034, 3043, 73 L.Ed.2d 690 (1982). Indeed, Congress specifically declared that the Act was intended
 
 
 13
 to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, ... and to assess and assure the effectiveness of efforts to educate children with disabilities.
 
 
 14
 20 U.S.C. § 1400(c).
 
 In passing the Act, Congress found that
 
 15
 there are more than eight million children with disabilities in the United States ...;
 
 
 16
 ....
 
 
 17
 ... [and that] one million of the children with disabilities in the United States are excluded entirely from the public school system and will not go through the educational process with their peers[.]
 
 
 18
 Id. § 1400(b)(1), (4). Congress also found that "there are many children with disabilities throughout the United States participating in regular school programs whose disabilities prevent them from having a successful educational experience because their disabilities are undetected." Id. § 1400(b)(5).
 
 
 19
 The Supreme Court has observed that, "[i]n responding to these problems, Congress did not content itself with passage of a simple funding statute." Honig v. Doe, 484 U.S. 305, 310, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). Instead, the IDEA "confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." Id. (citation and footnote omitted).
 
 
 20
 Under the IDEA, participating states must implement policies and procedures such that "all children residing in the State who are disabled, regardless of the severity of their disability, and who are in need of special education and related services are identified, located, and evaluated." 20 U.S.C. § 1412(2)(C); accord 34 C.F.R. § 300.128(a)(1).
 
 
 21
 The state is to develop and update on a yearly basis an individualized education program ("IEP"). W.G. v. Board of Trustees, 960 F.2d 1479, 1483 (9th Cir.1992) (citing, inter alia, 20 U.S.C. §§ 1401(a)(18)(D), 1412(1)); see also 20 U.S.C. §§ 1413(b), 1414(a)(5); 34 C.F.R. §§ 300.341, .342. The IEP is "the centerpiece of the [IDEA's] education delivery system for disabled children." Honig, 484 U.S. at 311, 108 S.Ct. at 598. Each IEP is to include, among other things, "a statement of the specific educational services to be provided to [the] child, and the extent to which [the] child will be able to participate in regular educational programs." 20 U.S.C. § 1401(a)(20)(C); accord 34 C.F.R. § 300.346(c). In formulating this statement, the IEP team will be obliged to "assure that, to the maximum extent appropriate," the child is "educated with children who are not disabled." See 20 U.S.C. § 1412(5)(B).[4]
 
 
 22
 The IDEA requires states to establish and maintain procedural safeguards in accord with federal guidelines. Id. § 1415(a); see also Honig, 484 U.S. at 311-12, 108 S.Ct. at 597-98; Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir.1992). Among the IDEA-mandated procedures is "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child." 20 U.S.C. § 1415(b)(1)(E). Upon the presentation of such a complaint, the state must also provide the opportunity for "an impartial due process hearing." Id. § 1415(b)(2).
 
 
 23
 California maintains a policy of complying with IDEA requirements. See, e.g., Cal. Educ.Code §§ 56000, 56100(i), 56128. It requires that local school districts identify disabled students by "actively and systematically seek[ing] out all individuals with exceptional needs." Cal. Educ.Code § 56300; see also id. §§ 56301, 56302. Preparation of IEPs for disabled students is required. Id. § 56344. California has implemented the procedural safeguards mandated by 20 U.S.C. § 1415. See Cal. Educ.Code §§ 56500-56507.
 
 
 24
 When these procedures have been invoked and an administrative decision has been rendered, a party aggrieved by the decision after exhausting administrative appeals may file a lawsuit in state or federal court. 20 U.S.C. § 1415(e)(2).[5] As with the administrative complaint, the civil action "may concern 'any matter relating to the identification, evaluation, or educational placement of the child.' " Rowley, 458 U.S. at 204-05, 102 S.Ct. at 3050 (quoting 20 U.S.C. § 1415(b)(1)(E)). In deciding such lawsuits, courts are to inquire whether the state has complied with IDEA procedures and whether the IEP developed for the child is "reasonably calculated to enable the child to receive educational benefits." Id. at 206-07, 102 S.Ct. at 3051; accord W.G., 960 F.2d at 1483. If a violation of the IDEA is found in either regard, the court "shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2).
 
 C.
 
 25
 HLPUSD contends that the hearing officer conducting the state administrative proceeding lacked jurisdiction to consider B.C.'s complaint. The essence of its argument is that, because the IDEA most often refers to "children with disabilities" and, in its former statutory incarnation, to "handicapped children," it is necessary for a school district or similar agency to identify a child as "disabled" or "handicapped" before the procedural safeguards mandated by 20 U.S.C. § 1415 can be invoked.
 
 
 26
 We reject this argument. The IDEA and accompanying federal regulations, as well as California law, make plain that, even though not previously identified as disabled, the student's alleged disability may be raised in an IDEA administrative due process hearing.
 
 
 27
 Section 1415(b)(1)(E), 20 U.S.C., requires that states participating in IDEA entertain complaints "respect[ing] any matter relating to the identification ... of the child." In turn, section 1415(b)(2) requires that such complaints be given "an impartial due process hearing." See also 34 C.F.R. § 300.506(a) (permitting parent to initiate a hearing when school district refuses either to initiate or change the identification of a student as disabled); Cal. Educ.Code § 56501(a)(2) (same). The language of these statutes necessarily encompasses a complaint based on a school district's refusal to identify a child as disabled.
 
 
 28
 A contrary result would frustrate the core purpose of the IDEA, which is to prevent schools from indiscriminately excluding disabled students from educational opportunities. In enacting the IDEA, Congress specifically recognized that undetected disabilities prevent many children from "having a successful educational experience." 20 U.S.C. § 1400(b)(5). If we found issues concerning the detection of disabilities to be outside the scope of IDEA "due process hearings," school districts could easily circumvent the statute's strictures by refusing to identify students as disabled.
 
 
 29
 In support of its argument, HLPUSD points to various provisions of Cal. Educ.Code § 48915.5. This statute prescribes procedures by which disabled students might be expelled from California public schools. The provisions on which HLPUSD relies refer to "pupil[s] with previously identified exceptional needs." In particular, section 48915.5(g) provides: "The parent of each pupil with previously identified exceptional needs has the right to a due process hearing conducted pursuant to Section 1415 of Title 20 of the United States Code if the parent disagrees" with a decision to expel the pupil. Looking to subsection (g), the School District argues that because B.C. had not previously been identified as having exceptional needs or otherwise being disabled, he had no right to an administrative due process hearing.[6]
 
 
 30
 Even if the School District's interpretation of section 48915.5(g) is correct, we would be obligated to void the statute insofar as it would prevent B.C. from obtaining an administrative hearing on the question of his disability. As the School District interprets the statute, it is inconsistent with the federal statutory and regulatory law by which California has chosen to abide. HLPUSD concedes as much. Furthermore, other provisions of California law clearly provide B.C. with the avenue he has pursued. See Cal. Educ.Code § 56501(a)(2).[7] In view of these inconsistencies, California law itself would mandate that section 48915.5 be overruled if the limitations HLPUSD reads into the statute in fact existed. See id. § 56000 ("It is the ... intent of the Legislature that nothing in this part shall be construed to abrogate any right provided individuals with exceptional needs and their parents or guardians under [the IDEA].").
 
 
 31
 There is no conflict, however, for the School District overlooks other provisions of section 48915.5. Specifically, subsection (h) provides:
 
 
 32
 No individual with exceptional needs shall be referred or recommended for expulsion under Section 48915 [concerning expulsion of students generally] and no governing board shall conduct expulsion proceedings for an individual with exceptional needs until all of the following have occurred:
 
 
 33
 (1) A preexpulsion assessment is conducted.
 
 
 34
 (2) The [IEP] team meets pursuant to subdivision (a) [which limits expulsion of disabled students to situations where the IEP team has found that, among other things, "the misconduct was not caused by, or was not a direct manifestation of, the pupil's identified handicap"].
 
 
 35
 (3) Due process hearings and appeals, if initiated pursuant to Section 1415 of Title 20 of the United States Code, are completed.
 
 
 36
 Cal.Educ.Code § 48915.5(h).
 
 
 37
 Conspicuously absent from this provision is any prerequisite that the candidate for expulsion possess "previously identified exceptional needs." Although subsection (h) incorporates by reference subsection (a), which does include this prerequisite, this is not significant. If subsection (h) was interpreted to include the "previously identified exceptional needs" prerequisite, the provision would become completely redundant of the statute's other subsections, which generally include the "previously identified exceptional needs" language. If possible, we must interpret subsection (h) in a manner that avoids rendering it surplusage. See, e.g., Nevada v. Watkins, 939 F.2d 710, 715 (9th Cir.1991) ("[i]t is a fundamental rule of statutory construction that we should avoid an interpretation of a statute that renders any part of it superfluous") (quotation and citation omitted).
 
 
 38
 We also note that a broad interpretation of section 48915.5(h) as providing for B.C.'s administrative complaint is consistent with the decisions of this court and the Supreme Court in Gonzales ex rel. Doe v. Maher, 793 F.2d 1470 (9th Cir.1986), aff'd as modified sub nom., Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).
 
 
 39
 In Honig, the Supreme Court addressed the question whether there existed an unwritten "dangerousness" exception to 20 U.S.C. § 1415(e)(3), known as the "stay-put" provision. 484 U.S. at 316-17, 108 S.Ct. at 600-01. This provision requires that disabled children "remain in the then current educational placement" pending the outcome of any administrative or judicial proceeding under section 1415--including one in which the proposed expulsion of a disabled student is challenged--unless the school and parents agree otherwise. We concluded that no such exception existed, and therefore invalidated portions of a former version of Cal.Educ.Code § 48915.5 that "confer[red] the power on school officials to suspend a [disabled] student's education for an indefinite period of time" pending the outcome of proceedings under 20 U.S.C. § 1415. Gonzales, 793 F.2d at 1485-86; see also Honig, 484 U.S. at 316, 108 S.Ct. at 600.
 
 
 40
 The Supreme Court in affirming our decision emphasized that in passing the IDEA, "Congress very much meant to strip schools of the unilateral authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." Honig, 484 U.S. at 323, 108 S.Ct. at 604; see also id. at 325 n. 8, 108 S.Ct. at 606 n. 8. "In doing so," continued the Court,
 
 
 41
 Congress did not leave school administrators powerless to deal with dangerous students; it did, however, deny school officials their former right to "self-help," and directed that in the future the removal of disabled students could be accomplished only with the permission of the parents or, as a last resort, the courts.
 
 
 42
 Id. at 323-24, 108 S.Ct. at 604; see also id. at 325-26, 108 S.Ct. at 605-06 (discussing remaining means of "self-help").
 
 
 43
 Following the decisions in Honig v. Doe, California amended section 48915.5, adding subsection (h). 1990 Cal. Stat. ch. 1234, sec. 3. There can be little doubt that the amendment came in response to the federal rulings. See Gonzales, 793 F.2d at 1493 (directing revision of the statute). Although subsection (h) does not appear to address any defect specifically identified by the courts, the broad language used by the Supreme Court leaves the unmistakable impression that all disabled students, whether or not possessing "previously identified exceptional needs," are entitled to the procedural protections afforded under the IDEA. We interpret subsection (h) accordingly and, on the basis of this state statutory provision, we reject HLPUSD's jurisdictional argument.[8]
 
 III.
 A.
 
 44
 Whether a party who is otherwise entitled to an award of attorney's fees under a federal statute nevertheless must comply with a state's "notice of claims" requirements in order to recover is a question of law to be reviewed de novo. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 B.
 
 45
 Section 1415(e)(4)(B), 20 U.S.C., states that, "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." We have previously recognized that this statute provides prevailing parents or guardians with the right to recover fees incurred at the administrative level. See Barlow-Gresham Union High Sch. Dist. No. 2 v. Mitchell, 940 F.2d 1280, 1284 (9th Cir.1991).
 
 
 46
 The district court awarded the parents their attorney's fees incurred during the course of the administrative proceedings. The School District challenges this award on two grounds. The first, that B.C. should not have prevailed in the administrative proceedings, fails for the reasons stated above. See supra part II. The second basis on which the School District seeks reversal of the fee award is that the parents failed to plead and prove compliance with Cal. Gov't Code § 905.
 
 
 47
 Section 905 and related provisions require that most claims "for money or damages against local public entities" must be presented for administrative consideration. E.g., Cal. Gov't Code §§ 905, 915. HLPUSD is undoubtedly a "local public entity" for purposes of the notice of claims statute. See id. § 900.4; Johnson v. San Diego Unified Sch. Dist., 217 Cal.App.3d 692, 266 Cal.Rptr. 187, 192 (1990). And, in the words of the California Supreme Court, section 905 and its related provisions "require timely filing of a proper claim as condition precedent to the maintenance of the action." City of San Jose v. Superior Court, 12 Cal.3d 447, 115 Cal.Rptr. 797, 802, 525 P.2d 701, 706 (1974). "Compliance with the claims statutes is mandatory; and failure to file a claim is fatal to the cause of action." Id. (citations omitted).
 
 
 48
 B.C. and his parents contend that the School District has waived any defense based on their failure to comply with section 905 because HLPUSD did not raise the statute as an affirmative defense in its answer, as required by Fed.R.Civ.P. 8(c). See 999 v. C.I.T. Corp., 776 F.2d 866, 870 n. 2 (9th Cir.1985) (failure to raise an affirmative defense in pleadings ordinarily waives that defense).
 
 
 49
 The School District responds that, as a condition precedent to the parents' action for attorney's fees, the "notice of claims" requirement is more than an affirmative defense, permitting the School District to raise it without having pleaded it as an affirmative defense. Because the requirements of California's Tort Claims Act implicate principles of sovereign immunity, the School District may well be correct. See, e.g., Williams v. Horvath, 16 Cal.3d 834, 129 Cal.Rptr. 453, 455, 548 P.2d 1125, 1127 (1976); cf., e.g., Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir.1980) ("timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA"). We need not decide this issue, however, as the district court disposed of HLPUSD's argument on another ground.
 
 
 50
 Specifically, the trial court ruled that "[t]he claim-presentation requirements of the California Tort Claims Act are substantive limitations which may not be imposed to impair or condition a federally created right to equal protection under the U.S. Constitution." In so holding, the district court followed California Supreme Court and Ninth Circuit decisions ruling that California's Tort Claims Act did not apply to actions under 42 U.S.C. § 1983 alleging violations of federal constitutional rights. See Williams, 129 Cal.Rptr. at 455-58, 548 P.2d at 1127-30; Willis v. Reddin, 418 F.2d 702, 704-05 (9th Cir.1969); see also May v. Enomoto, 633 F.2d 164, 167 (9th Cir.1980); Donovan v. Reinbold, 433 F.2d 738, 741-42 (9th Cir.1970).
 
 
 51
 In response, the School District argues that, because "the Federal Government has made participation [under IDEA] optional, it cannot be said Congress intended [the statute] to be an exercise of power under the Supremacy Clause of the Constitution." The School District thus concludes that application of the state Tort Claims Act to actions for attorney's fees under 20 U.S.C. § 1415(e)(4)(B) represents California's right to "legislate upon matters which are local in character although embraced within the federal authority until such time as the federal authority may be exercised by act of Congress."
 
 
 52
 We disagree. The School District's preemption-type analysis may be appropriate in conducting a "dormant Commerce Clause" analysis, cf., e.g., Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 669-70, 101 S.Ct. 1309, 1315-16, 67 L.Ed.2d 580 (1981) (plurality), but it fails where Congress has actively invested citizens with enforceable rights. Once California chose to participate under the IDEA, the state became obligated "to establish and maintain procedures in accordance with [the IDEA's attorney's fee provision] to assure that children with disabilities and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate education." 20 U.S.C. § 1415(a).
 
 
 53
 Given that California residents are vested with rights under the IDEA program, we need not determine "how to incorporate into federal law as much state law as a federal action will tolerate, [ ]or how best to further state policies and goals in the litigation of a federal action." Brown v. United States, 742 F.2d 1498, 1504 (D.C.Cir.1984) (en banc), cert. denied, 471 U.S. 1073, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985). Instead, "[t]he issue is how best to effectuate the federal policies embodied in a federal action [if] the action does not itself supply the complete legal framework necessary to the effectuation of those policies." Id. Accordingly, the Brown court instructed that, before borrowing provisions of state law in adjudicating a federal claim, "a court must first look to see if there is indeed ... a deficiency" in the federal scheme. Id.
 
 
 54
 In Brown, the court determined that a local "notice of claims" provision akin to the one raised by HLPUSD did not apply to actions based on federal constitutional rights. Id. at 1509-10. The court based its decision on the fact that there was no deficiency in the federal scheme requiring the court to borrow from state law. Id. at 1504-09. In arriving at this conclusion, the court observed that the function of "notice of claims" requirements "is to compel notice so that the municipal defendant may investigate early, prepare a stronger case, and perhaps reach an early settlement." Id. at 1506.
 
 
 55
 In the present case, there is no deficiency in the federal scheme that would be filled by adopting California's notice of claims requirement. In the case of a federal claim for attorney's fees arising from prior state administrative proceedings, the state agency--in this case, HLPUSD--already has had a full opportunity to "investigate early, prepare a stronger case, and perhaps reach an early settlement."
 
 
 56
 Furthermore, as with the "notice of claims" provision in Brown, Cal. Gov't Code § 905 and its related provisions constitute more than a statute of limitations. Compliance with the provisions, when they apply, is a "condition precedent" to a cause of action. See City of San Jose, 115 Cal.Rptr. at 802, 525 P.2d at 706.[9] As such, it is difficult to assume that Congress, when it "set out the elements of [the] federal cause of action, would ... intend for additional and unstated elements to be also considered necessary, and for state law to be consulted to supply those missing (yet necessary) elements of the federal action." Brown, 742 F.2d at 1508.
 
 
 57
 Accordingly, we reject HLPUSD's argument that the parents' counterclaim for attorney's fees is barred for failing to plead and prove compliance with Cal. Gov't Code § 905.
 
 IV.
 
 58
 B.C.'s parents have reserved the right to seek attorney's fees on appeal. See 9th Cir. R. 39-1.6. As prevailing parties on appeal, they are entitled to an additional fee award under 20 U.S.C. § 1415(e)(4)(B). See Mitchell, 940 F.2d at 1286. We remand the case to the district court for a determination of the amount of fees owing.
 
 
 59
 The parents also ask that sanctions be imposed against the School District for taking a frivolous appeal from the district court's ruling on the parents' counterclaim for attorney's fees. Although the School District provided scant support for its argument that a state "notice of claims" provision barred the fees claim, the argument had not previously been addressed and, therefore, we conclude that the School District's appeal is not frivolous. Accordingly, the request for sanctions is denied.
 
 V.
 
 60
 We agree with the district court's conclusion that the California Special Education Hearing Officer had jurisdiction to hear B.C.'s complaint, and that the parents were entitled to their attorney's fees for the administrative proceeding. B.C.'s parents are also entitled to an additional fee award for defending this appeal in an amount to be determined by the district court on remand.
 
 
 61
 The judgment of the district court is AFFIRMED and the case is REMANDED for assessment of attorney fees and costs.
 
 
 
 *
 The names of the real-party-in-interest/appellee and his guardians have been omitted from this opinion. The clerk is directed to conform the court's records to the revised caption appearing here
 
 
 **
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 As discussed below, federal jurisdiction exists under 20 U.S.C. § 1415(e)(2), (e)(4)(A). See infra note 5 and accompanying text
 
 
 [2]
 The School District filed two notices of appeal: the first after the trial court's ruling on HLPUSD's claim and, six weeks later, the second following the court's judgment on B.C.'s counterclaim. Only the latter notice had effect; it was sufficient to bring the entire case before this court. See Fed.R.Civ.P. 54(b). Because B.C.'s claim for attorney's fees did not involve fees pertaining to the district court litigation, the rule separating for purposes of finality a decision on the merits from a decision on attorney's fees "for the litigation at hand" is not applicable here. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 199-02, 108 S.Ct. 1717, 1720-22, 100 L.Ed.2d 178 (1988). Therefore, a final judgment did not exist until the district court decided the counterclaim
 
 
 [3]
 Previously, the statute was known as the Education of the Handicapped Act. Congress changed the name in 1990. Pub.L. No. 101-476, § 901(a), 104 Stat. 1103, 1141-42
 
 
 [4]
 The IEP is to be developed in a meeting among a qualified state representative, the child's teacher, and the parents or guardian of the child, together with the child, where appropriate. 20 U.S.C. § 1401(a)(20); 34 C.F.R. § 300.344. In this case, the hearing officer concluded that HLPUSD never convened an IEP team to investigate B.C.'s situation
 
 
 [5]
 The district court's jurisdiction in this case is premised on this statute. Although HLPUSD styled its complaint in the form of a state petition for writ of mandate, we see little reason not to consider the action as one for judicial review of the hearing officer's decision
 
 
 [6]
 The hearing officer rejected this argument on the ground that, if HLPUSD had taken the steps required of it by federal and state law, B.C. would have been a "pupil with previously identified exceptional needs."
 
 
 [7]
 Although the School District points to other procedures B.C. also might have followed, HLPUSD does not contend that these alternative procedures provided him with his exclusive remedy
 
 
 [8]
 In support of its argument, the School District also relies on a January 22, 1990 "Program Advisory" issued by the California State Department of Education. Without explanation or citation, the document declares that "a referral to special education during the pendency of expulsion proceedings does not entitle the pupil to challenge the expulsion pursuant to [IDEA] procedural safeguards (i.e., due process)." We believe this document fails to take section 48915.5(h) into account. In any event, the "Program Advisory" is at odds with the federal law by which California has opted to conform
 
 
 [9]
 The School District concedes as much in its argument that it need not have pleaded as an affirmative defense the parents' noncompliance with the "notice of claims" provision