Jeffrey STELDT, A Minor, by Suzanne Steldt, his natural parent and next friend, Plaintiff,

v.

SCHOOL BOARD OF the RIVERDALE SCHOOL DISTRICT, Thomas Yager, individually and in his official capacity as School District Administrator of the Riverdale School District and Marsha Spees, individually and in her official capacity as Special Education Director of the Riverdale School District, Defendants.

No. 94–C–0921–C.

United States District Court, W.D. Wisconsin.

Jan. 3, 1995.

Ronald S. Stadler, Stadler & Schott, S.C., Brookfield, WI, for Jeffrey Steldt.

Peter A. Martin, Lathrop & Clark, Madison, WI, for School Bd. of Riverdale School, Thomas Yager, Marsha J. Spees.

## OPINION and ORDER

CRABB, Chief Judge.

This is a case arising under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–85. Plaintiff contends that he is a student with a disability entitled to a due process hearing before he can be expelled from high school for the violent and assaultive acts he committed on October 6, 1994. He has moved for an order enjoining defendants preliminarily from excluding him from the Riverdale High School, refusing to initiate and proceed with a due process hearing, and continuing to deny him a free appropriate public education. A non-evidentiary hearing was held on the motion on December 16, 1994.

■ Given the posture of this case and the directives and purposes of the Individuals with Disabilities Education Act, I conclude that plaintiff is entitled to preliminary injunctive relief because he enjoys at least a modest chance of succeeding on the merits of his claim that he is a disabled student entitled to a due process hearing before he can be expelled and because the harm he would suffer if an injunction does not issue is irreparable and severe and in excess of that which defendants would suffer if the injunction issues. In addition, an injunction would not disserve the public interest.

From the findings of fact proposed by the parties and their affidavits, I make the following findings of fact, solely for the purpose of deciding this motion.

## FACTS

Plaintiff Jeffrey Steldt is a citizen of Wisconsin, residing in Blue River, Wisconsin with his parents. Defendant School Board of the Riverdale School District is a body politic charged with the duty to operate the schools of the district in compliance with all federal and Wisconsin state laws. Defendant Thomas Yager is District Administrator of the Riverdale School District. Defendant Marsha Spees is Director of Special Education for the Riverdale School District, responsible for the daily administration of all special education programs.

Plaintiff has suffered from an emotional disturbance since early childhood. Each school district in which he has attended school has recognized his emotional disturbance and his need for special education and related services. From 1988, when he began attending school in the Riverdale School District, until May 1993, he received special education and related services through the district's program for emotionally disturbed students. At two different times in early 1992, when plaintiff was in middle school, plaintiff's father met with plaintiff's special education teacher and expressed interest in removing plaintiff from special education classes before he graduated from high school. On both occasions, plaintiff's special education teacher advised against doing so.

On or about May 1, 1993, near the end of his freshman year in high school, plaintiff asked his mother to withdraw him from the defendant district's special education program. On May 25, 1993, plaintiff's parents attended an Individualized Educational Placement conference and discussed with the high school principal, Dave McHenry, plaintiff's desire to be removed from special education. After the meeting, McHenry met with defendant Spees. They discussed plaintiff's academic and behavioral status during his freshman year and determined that removing plaintiff from special education would not deny him a free appropriate public education. Shortly afterward, plaintiff's mother, Suzanne Steldt, made a formal request on plaintiff's behalf to remove her son from the special education program. Starting with the 1993–94 school year, the district stopped providing plaintiff with special education services. The district did not seek a due process hearing to override plaintiff's parents' request to remove him from special education.

During the 1993–94 school year plaintiff's grades ranged generally from average to

above average. Plaintiff was disciplined sporadically during the year for minor infractions. Defendant Spees never received a request from any member of the school district or from plaintiff's parents to refer plaintiff for re-evaluation by a multi-disciplinary team to determine whether he had any exceptional educational needs. On October 6, 1994, plaintiff committed a series of acts, including grabbing one student by the shoulders and pushing her into a wall, tipping another out of his desk, pushing a teacher and placing his hands on the teacher's throat, hitting the principal in the stomach when he came to the aid of the teacher, smashing the protective glass door of a fire extinguisher and leaving school without permission. Plaintiff was suspended immediately for his conduct and an expulsion hearing was scheduled for October 17, 1994 before the school board.

Before the hearing, defendant Spees reviewed plaintiff's file to determine whether there was reasonable cause to believe that plaintiff should be considered for an M–team evaluation in light of his conduct on October 6, 1994 and concluded there was not. She took into account plaintiff's average to above average grades, the fact that his discipline problems did not rise to the "severe, chronic or frequent" level and the absence of any indication that plaintiff might be experiencing "severe, chronic or frequent" discipline problems outside the school setting.

Plaintiff's parents had advance notice of the October 17 expulsion hearing. They retained counsel to represent them and participated in the meeting personally. Minutes before the hearing began, the school district's attorney and the board members were given copies of an October 14, 1994 report by a Dr. Louis Fulton in which Dr. Fulton concluded that plaintiff suffered from attention deficit hyperactivity disorder resulting in impulsive and explosive behavior. The defendant school board did not convene a multi-disciplinary team to evaluate Dr. Fulton's information or to make a determination whether plaintiff's behavior on October 6 was a manifestation of his disabilities. The school board concluded there was no reasonable cause to conclude that plaintiff was a child with exceptional education needs. At the hearing, defendant Spees testified that no M–team had been convened to evaluate plaintiff and that she did not believe either that plaintiff was a student with exceptional education needs or that his conduct was related to his disability.

On October 19, the board issued an order expelling plaintiff from the district for the 1994–95 school year. His parents did not consent to the order. On November 28, 1994, a request for a due process hearing was made on plaintiff's behalf. The request has not been rejected formally but is pending before defendant Yager, the district administrator.

Defendant school district is providing plaintiff approximately four hours a week of homebound instruction in English and Social Studies.

## OPINION

Under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–85, formerly the Education of the Handicapped Act, school districts have the legal obligation to provide a free appropriate public education to all disabled students within their jurisdiction. The act establishes a comprehensive system of procedures intended to insure both that parents have a chance to participate in decisions affecting the education of their children and that they have opportunities for administrative and judicial review of decisions with which they disagree. *Honig v. Doe,* 484 U.S. 305, 308, 108 S.Ct. 592, 596, 98 L.Ed.2d 686 (1988). The act forbids the expulsion or lengthy suspension of disabled students without advance written notice by the school district of a proposal to change the child's placement or program and the initiation of an impartial due process hearing if the parents contest the proposed expulsion. § 1415(b)(1) and (2). Either party may obtain further administrative review of the hearing decision and, if still dissatisfied, may file a civil action in any state or federal court. § 1415(c), (e)(2). A "stay-put" provision in the law requires the school district to keep the child in his "then current educational placement" pending the final resolution of the due process proceedings, un-

less the school district and parents agree otherwise. § 1415(e)(3).

The IDEA is intended to restrict school authorities from expelling students with disabilities arbitrarily and unilaterally. The elaborate hearing and review procedures, the stay-put provision and the lack of any exception for dangerous students reveal Congress's intent to end what it found to be a widespread practice of dealing with hard-to-handle disabled students simply by labeling them as behavioral problems and barring them from the classroom without providing educational alternatives. *Honig*, 484 U.S. at 324, 108 S.Ct. at 604. In drafting these acts, Congress evinced its belief in the importance of free appropriate public instruction for *all* children and a correlative belief that the schools could find more effective ways than expulsion of responding to the discipline problems presented by emotionally disturbed students.

The legislation does not strip school districts of all power to remove dangerous students from its classrooms; they are stripped only of the right to do so unilaterally. If a district believes that maintaining a student in his or her placement is substantially likely to result in injury to the child or to others, and it cannot persuade the child's parents to agree to a change in placement, it can seek a court order for a change. *Honig*, 484 U.S. at 323–24, 326–27, 108 S.Ct. at 604–05, 605–06. In addition, as the Supreme Court has noted, schools can use timeouts, study carrels, detention, restriction of privileges or a temporary suspension of up to ten days. *Id.* at 325, 108 S.Ct. at 605; 34 C.F.R. § 300.513 (1987).

In this case, neither side disputes that if plaintiff's parents had never removed him from special education, plaintiff would be entitled to all the procedural protections of the IDEA before he could be expelled from school or suspended for longer than ten days. Plaintiff argues that he never lost those protections: that the school district has an obligation to a disabled student that does not disappear simply because the student's parents ask that the student be removed from special education classes. Under plaintiff's interpretation, a school district cannot be relieved of its obligations to students found disabled unless it either convenes a multi-disciplinary team that finds the student no longer in need of exceptional educational services or initiates a due process procedure and fails to obtain an override of the parents' decision. Plaintiff argues also that the school board had reasonable cause to believe he was in need of a formal evaluation of his status either because his conduct on October 6 manifested a need for re-evaluation of his educational needs or because Dr. Fulton's report revealed such a need. and that in either instance the school board was required to refrain from proceeding with the expulsion hearing until a re-evaluation had been accomplished. Defendants maintain that in the absence of indications that a student will be deprived of a free appropriate public education if he is removed from special education, the law does not require them to treat a student as disabled after a parent has requested an end to special education services.

It is possible that defendants are correct, but the law on this point is still in the developmental stage and far from clear. A reasonable argument can be made for plaintiff's position that a parent's request to withdraw a student from special education classes does not change the student's classification as one in need of exceptional education services, at least in the absence of a formal re-evaluation of his situation. Plaintiff argues with some force that adopting defendants' position would mean that a school district could disavow all of its obligations under the IDEA simply by declaring a student to be without disability and refusing to initiate the due process hearing. Although in this case there is nothing to suggest that defendants have been remiss in any respect in allowing plaintiff to be removed from special education, a holding that a school board may unilaterally expel any student not currently classified as being in need of services could undermine the purposes of the legislation. Other school districts might read such a holding as an incentive to delay the classification of emotionally disturbed students as students in need of services.

In deciding a motion for preliminary injunction, a court must weigh four factors: the movant's likelihood of ultimate success on the merits of his claim, the irreparability of any harm the movant might suffer if the relief is not granted, whether the harm the movant would suffer if the injunction does not issue outweighs the harm respondents would suffer if the injunction did issue, and the public interest. *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359 (7th Cir.1993); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984). All of the factors must be considered together. A strong likelihood of success on the merits may entitle the movant to an injunction even if the chance of irreparable harm is slight; similarly, even a modest chance of success on the merits may be enough if the potential irreparable harm to the movant is severe and that to the opponent is slight.

At this point I cannot say that plaintiff could not succeed ultimately on his contention that he is entitled to a due process hearing on the merits of his expulsion. It is true that qualified professionals have reviewed his record and have determined that he is not a student in need of exceptional educational services at this time. On the other hand, his special education teacher advised his parents against removing him from special education classes, a doctor has found him to have a disorder that results in explosive and disruptive behavior and his actions on October 6 reveal an uncommon degree of disturbance.

Plaintiff cites two cases from the Ninth Circuit in which students who had never been found to be disabled were held to be entitled to the protections of the IDEA before they could be expelled. In *Hacienda La Puente Unified School District of Los Angeles v. Honig*, 976 F.2d 487 (9th Cir.1992), the court held that the IDEA's protections extended to children with disabilities even where those children have not been identified as disabled before expulsion proceedings are initiated. In *Hacienda*, the student had been expelled in December; three weeks later his parents requested and were granted a due process hearing to determine whether the student was eligible for special education, whether the acts for which he had been expelled were a manifestation of his disability and whether the student had been receiving the education to which he was entitled when he was expelled. *Id.* at 489. The court of appeals held that the hearing examiner had jurisdiction to hear the matter despite the lack of any prior identification of disability. In a district court case, *M.P. v. Governing Board of the Grossmont Union High School District*, 858 F.Supp. 1044 (S.D.Cal.1994), the court read *Hacienda* as requiring application of the IDEA's stay-put provision to a child who had never been diagnosed as disabled, whose parents, teachers and doctors had never suggested he might be in need of special services, and who had never made a request for evaluation for special education needs until after he had been suspended for bringing a gun to school.

Defendants argue that neither of these cases is of any precedential value because they are from another circuit and involve considerations of California law not present in this case. However, *Hacienda* is the only appellate decision either side has cited or that my research has uncovered and is important for that reason alone. Moreover, the reasoning of the case is persuasive, as is the court's effort to give content to the legislation and to follow *Honig*. The court considered California law only to determine whether it was in conformance with federal directives, concluding that under federal law, a state statute could not be read as requiring that a candidate for expulsion have "previously identified exceptional needs." *Hacienda*, 976 F.2d at 493.

Although plaintiff may have only a slight chance of succeeding on the merits of his claimed right to a due process hearing, the harm he will suffer in the absence of an injunction is severe and irreparable. One need not be a professional educator to realize the harm to a student of keeping him from learning opportunities, from the company of his friends and from the daily structure provided by a school. Even if common sense and universal experience did not supply this information, the Individuals with Disabilities Education Act makes it clear that Congress

viewed expulsion as being of irreparable harm to students, to their parents and to the community. *See generally Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592. The entire act is framed as a response to the serious concern that children were being denied the opportunity to receive a free appropriate public education by being kept out of school improperly.

Defendants argue that they would suffer harm if an injunction issues because they would have difficulty enforcing discipline generally if plaintiff is allowed to return to school after having committed the kinds of violent acts he did. Without depreciating the sincerity of defendants' beliefs, I think that risk of harm is overstated. Defendants have available to them a full range of disciplinary sanctions; only *unilateral* expulsion is denied them. Although defendants have not argued that re-admitting plaintiff would pose an intolerable risk of danger to other students or to staff, they do have the option of returning to this court or going to state court to seek an injunction against plaintiff's return to school if they believe plaintiff would be substantially likely to injure himself or others if he is returned to school. *Id.* at 328, 108 S.Ct. at 606.

Finally, I conclude that carrying out the spirit and intent of the Individuals with Disabilities Education Act would serve the public interest.

## ORDER

IT IS ORDERED that the motion for preliminary injunction of plaintiff Jeffrey Steldt, A Minor, by Suzanne Steldt, his natural parent and next friend, is GRANTED. Defendants School Board of the Riverdale School District, Thomas Yager and Marsha Spees are enjoined preliminarily from excluding him from Riverdale High School, refusing to initiate and proceed with a due process hearing and continuing to deny him a free appropriate public education.